# Third District Court of Appeal

## State of Florida

Opinion filed April 16, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D23-0441, 3D23-2208
Lower Tribunal No. 20-17937

_____

**Southpoint Shore Management LLC,**
Appellant,

vs.

**Homexpo Miami Corp.,**
Appellee.

Appeals from the Circuit Court for Miami-Dade County, William Thomas, Jennifer D. Bailey and Lourdes Simon, Judges.

Mamone Villalon, Tyler A. Mamone, Rachel E. Walker, and Yetian Wang, for appellant.

Law Offices of Jason Gordon, P.A., and Jason Gordon (Hollywood), for appellee.

Before LOGUE, C.J., and EMAS and FERNANDEZ, JJ.

PER CURIAM.

Southpoint Shore Management LLC ("Southpoint") appeals an adverse jury verdict in favor of Homexpo Miami Corp. ("Homexpo") and the trial court's subsequent order denying Southpoint's motion for a new trial. We have jurisdiction. Fla. R. App. P. 9.030(b)(1)(A). Because the trial court misapplied section 489.128, Florida Statutes, we reverse and remand for further proceedings.

## I.

In 2017, Southpoint hired Homexpo to soundproof and level the floors at its South Beach property, and to obtain and install Greek AAA Grade, White, Polished Thassos marble therein.[1] Relevant here, Homexpo was an unlicensed contractor that did not perform any work on Southpoint's property. Instead, the work at Southpoint's property was performed by third-party licensed contractors that were hired by Homexpo.

The first shipment of marble arrived in 2018, but it stayed in a warehouse for seven months because Southpoint's property was experiencing construction delays. It was eventually delivered to Southpoint's property. Months later, Southpoint rejected the first delivery due to defects in the marble and Homexpo agreed to remove and replace it. The second

_____

[1] Unlike other marble, the marble Southpoint requested was purely white and contained no shadows, veins, chippings, or pinholes.

shipment of marble was delivered to Southpoint's property three months after arriving at Homexpo's warehouse. After delivery, Southpoint rejected the marble again, but this time, Homexpo refused to remove or replace it.[2]

Southpoint filed a seven-count complaint against Homexpo claiming that the marble was defective. Homexpo filed an answer denying all allegations and it asserted affirmative defenses such as equitable estoppel, failure to mitigate damages, laches, waiver, and unclean hands. Homexpo filed a counterclaim for money owed to it.

The litigation proceeded and both parties moved for summary judgment. In its motion, Southpoint argued that because Homexpo was an unlicensed contractor it could not raise contractual defenses or counterclaim for damages based on the contract, pursuant to chapter 489.128, Florida Statutes, which states, in pertinent part: "[a]s a matter of public policy, contracts entered into on or after October 1, 1990, by an unlicensed contractor shall be unenforceable in law or in equity by the unlicensed contractor." § 489.128(1), Fla. Stat.

Following a hearing, the trial court granted Southpoint's motion for summary judgment on Homexpo's counterclaim and affirmative defenses.

---

[2] For reasons that remain unclear, some of the marble was installed at Southpoint's property.

The case then proceeded to a jury trial. Prior to opening statements, Southpoint's counsel had the following discussion with the trial court:

> MR. MAMONE: Your Honor, not to rehash anything. The [motion for summary judgment] was granted on our part, and –
> THE COURT: Yeah. I don't want to go back over that.
> MR. MAMONE: Contractual defenses. We understand the contract remains at issue itself, but we just move in limine to any reference to any kind of defense that could be based on it since that's already been ruled on.
> THE COURT: Right. That's the law, and so I don't know why – and I don't think Counsel [for Homexpo] is going to do that.

Despite this discussion, Homexpo referenced defenses based on the contract during opening statement. Counsel for Homexpo stated:

> Paragraph 6 states, in part, "It is understood and agreed that Homexpo Miami shall not be held responsible for any and all damages and/or claims resulting from natural variations to the products. Marble products, due to their brittle and porous nature are subject to chipping and splitting. And Homexpo Miami shall not be responsible for such events."
> . . .
> I ask that you pay attention to paragraph number 7 of the terms and conditions, which states, "It is agreed that the buyer or its agent has been afforded the opportunity to inspect the goods prior to installation and following such inspection shall be deemed to have accepted the goods in their totality and natural variations contained therein."

4

After the first day of trial, Southpoint filed a motion in limine requesting the trial court preclude Homexpo from further asserting contractual defenses, citing the trial court's earlier summary judgment order. However, following a hearing, the trial court denied Southpoint's motion and modified its previous summary judgment order to allow Homexpo to present and discuss the various contract provisions that favor Homexpo.

Homexpo continued to reference the contractual provisions in its favor. In closing argument, Homexpo's counsel stated:

> Now, throughout the trial, <u>I've shown you many times</u> the terms and conditions for the contract that we have[.] <u>The terms and conditions apply</u>. They're agreed to. They are part of the contract. We've all seen contracts. We know how it works. <u>This is what governs</u>. This is what is going to govern that relationship. And here, we have those terms (emphasis added).

After the three-day jury trial, a verdict was entered in favor of Homexpo on each of Southpoint's claims.

On appeal, Southpoint argues that the trial court erred when it denied Southpoint's motion in limine which sought to preclude Homexpo from asserting any contractual defenses at trial.

## II.

"Generally, rulings on motions in limine are reviewed for an abuse of discretion." <u>Bellevue v. Frenchy's S. Beach Cafe, Inc.</u>, 136 So. 3d 640, 642-

5

43 (Fla. 2d DCA 2013). But when the trial court's ruling is "based upon an erroneous interpretation of the applicable case law," the standard of review is de novo. Id. at 643.

III.

The Florida Legislature "deem[ed] it necessary in the interest of the public health, safety, and welfare to regulate the construction industry." Incident365 Florida, LLC v. Ocean Pointe V Condo. Ass'n, Inc., 49 Fla. L. Weekly D2004 (Fla. 3d DCA, 2024); see § 489.101, Fla. Stat. "[T]he Legislature has, as a matter of state policy, greatly disadvantaged the contractor who chooses not to obtain the legally required license." Earth Trades, Inc. v. T & G Corp, 108 So. 3d 580, 586-87 (Fla. 2013). "Under the amended section 489.128, the unlicensed contractor has no rights or remedies for the enforcement of the contract." Id. at 586.[3]

In applying Chapter 489, we have held that unlicensed contractors such as Homexpo cannot assert contractual defenses. See John Hancock-Gannon Joint Venture IT v. McNully, 800 So. 2d 294, 297 (Fla. 3d DCA 2001)

---

[3] Despite hiring third parties to install the marble, Chapter 489 still applies to Homexpo. See § 429.105, Fla. Stat. (providing that 'contractor' is defined as "the person who, for compensation, undertakes to, submits a bid to, or does himself or herself or by others construct, repair, alter, remodel, or improve any building or structure. . .") (emphasis added).

6

(holding that the unlicensed contractor could not enforce his contract with the owner, and therefore, could not assert his contractual defenses). We stated: "Not only did McNully <u>defend on the basis of his unenforceable contract</u> with the owner, he used the contract between the owner and the general contractor to <u>interpose defenses which are clearly prohibited by statute</u>." <u>Id.</u> at 296 (emphasis added).

Applying the clear statutory language of section 489.128 and our prior holding in <u>McNully</u>, we conclude that the trial court erred when it permitted Homexpo to present defenses that it could not legally enforce. Because we reverse on this issue, we need not address the other issues raised.

Reversed.